COMMONWEALTH of Pennsylvania,
Appellee

v.

Daniel S. GRIFFIN, Appellant.

Superior Court of Pennsylvania.

Argued April 12, 2011.

Filed July 1, 2011.

William Ruzzo, Kingston, for appellant.

Gregory S. Skibitsky, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: PANELLA, LAZARUS, and OTT, JJ.

OPINION BY PANELLA, J.:

Appellant, Daniel S. Griffin, appeals from the judgment of sentence entered on August 25, 2010, in the Court of Common

Pleas of Luzerne County. After careful review, we affirm.

The record in the case *sub judice* reveals that on May 7, 2009, Officer Russell Walbert of the Fleetwood Borough Police Department in Berks County, Pennsylvania, was on duty patrolling Fleetwood Borough and Richmond Township. *See*, N.T., Suppression Hearing and Bench Trial, 1/19/10, at 4. On patrol, Officer Walbert observed a charcoal gray vehicle which appeared "to be an unmarked police car ... traveling along Crystal Cave Road." *Id.*, at 5. As the vehicle came toward Officer Walbert, he observed the word "police" on the front license plate." *Id.* Then, as the vehicle passed him, Officer Walbert noticed "some type of tinting in the windows." *Id.* "The vehicle also had 'canine' in red stickers on the rear end of the vehicle" as well as a "police interceptor insignia that Ford puts on their Crown Vic police interceptor models." *Id.* According to Officer Walbert, he followed the vehicle for approximately three to four miles "due to its speed." *Id.* He observed the vehicle to be "travelling between 55 and 60 miles an hour in a 35 mile per hour zone" after which point he initiated a traffic stop. *Id.*

Officer Walbert testified that the occupant of the vehicle then "jumped out of the vehicle waiving a badge and badge wallet" after which Officer Walbert ordered him back into the vehicle. *Id.* When Officer Walbert approached the vehicle, Griffin made it a point to let him know he was a police officer after which Officer Walbert asked him for his license, registration, insurance and credentials. *Id.*, at 6. Griffin gave Officer Walbert his driver's license and showed him the badge from the inside of the car; however, he would not hand his badge to Officer Walbert. *Id.* According to Officer Walbert, Griffin then fumbled through various items in the badge wallet and in a black fanny packet, which he

retrieved from the center console of the vehicle. *Id.* Griffin eventually presented Officer Walbert "with a 1997 expired MPOETC card." *Id.*

Officer Walbert decided to investigate Griffin's employment status as a police officer based upon what he believed to be inconsistencies in Griffin's statements during the stop. *Id.*, at 6–7. Griffin had "mentioned various things going from being on disability to retired to a plain-clothes detective and a canine officer" which prompted Officer Walbert to discuss the matter with his chief. *Id.*, at 7. The chief authorized Officer Walbert to contact the Kingston Police Department. *Id.* Officer Walbert received a telephone call from Chief Keiper of the Kingston Police Department who indicated that Griffin was no longer employed there as a police officer. *Id.*, at 7–8. Based upon the information received from the Kingston Police Department, which included a letter of termination and request for return of Griffin's official police badge, coupled with Officer Walbert's observations, he elected to contact the District Attorney's office for advice. *Id.*, at 8.

Approximately one week later, Officer Walbert filed charges against Griffin at Magisterial District Judge Greth's Officer in Fleetwood, Berks County, for impersonating a public servant. *Id.*, at 8. An arrest warrant was subsequently issued and "put into NCIC and CLEAN" after which Officer Walbert notified the Kingston Police Department. *Id.*, at 8–9.

On May 13, 2009, Officer Douglas Wolfe of the Wilkes–Barre City Police Department was on duty when he received information that Griffin, who was wanted on a warrant, was present at a specific location. *Id.*, at 14–15. Additional officers went to the described location in search of Griffin and Officer Wolfe was instructed to look in the area for Griffin's vehicle "in case they

could not locate him, and he may possibly return to his vehicle". *Id.*, at 15. Officer Wolfe located Griffin's vehicle, "in a parking lot on Northampton Street directly across from the YMCA" and ran the registration plate to confirm ownership. *Id.* According to Officer Wolfe he "waited by the vehicle" until he "learned through radio contact that [Griffin] had been taken into custody" after which he radioed his commanding officer as to whether anything needed to be done with the vehicle. *Id.* Police headquarters contacted the Fleetwood Police Department, who requested that the vehicle be towed because they were going to obtain a search warrant on the vehicle. *Id.*, at 15–16. As a result, Griffin's vehicle was towed from the public lot to a secured facility at the Wilkes–Barre Police Department. *Id.*, at 16.

In the interim, Detective Robert Simonetti of the Wilkes–Barre Police Department received notification from his captain that Griffin had been arrested on a warrant out of Berks County on charges filed by Officer Walbert for impersonating a public servant and false identification to authorities. *Id.*, at 20. Further, Detective Simonetti was informed that Griffin's vehicle had been located in a public parking lot and towed, following Griffin's arrest, to police headquarters. *Id.* Officer Walbert, in conjunction with the Berks County District Attorney's Office, requested that the Wilkes–Barre Police Department procure a search warrant for the vehicle to look for "evidence to support those charges." *Id.* Upon receipt of the pertinent information and arrest warrant from the Fleetwood Borough Police Department, Detective Simonetti consulted with the Luzerne County District Attorney's office, which approved the request for a search warrant application. *Id.*, at 21. Detective Simonetti testified that he prepared the search warrant for the vehicle "mostly on Officer Walbert's affidavit along with the fact that

our department had arrested Mr. Griffin and his vehicle had been towed to headquarters." *Id.* A search warrant was subsequently issued for Griffin's 2003 Ford Crown Victoria, bearing Pennsylvania registration RR50E0. *Id.*, at 21–22. The warrant listed the specific items subject to the search as "police identification, police cards, police paperwork, police officer badges, detective badges, firearms, ammunitions, and magazines for firearms." *Id.*, at 22.

Detective Simonetti, along with Officer Walbert of the Fleetwood Borough Police Department, conducted a search of Griffin's vehicle, which was being housed in the basement of the Wilkes–Barre City Police Department. *Id.*, at 23. The vehicle looked:

> [L]ike an unmarked police vehicle. There [were] numerous things on it that made it look like a police vehicle, police interceptor sign on the front. There was a jacket hanging in the back window that said police on it. There was a red light on top of the roof. It looked like— there was a time when most police vehicles, just about anywhere, were Crown Victorias. It was a Crown Vic. It looked like an unmarked police car.

*Id.*, at 23–24. A search of Griffin's vehicle uncovered several items that may be utilized to impersonate a police officer including: a gold Kingston PD badge, detective business cards, officer business cards, a taser, flex ties, a black club, MPOETC cards, drug task force identification card, canister of OC spray, and a Raven .25 caliber ACP Pistol serial number: 1342085 with six (6) rounds of ammunition and a live round located in the chamber of the firearm. *Id.*, at 24. The gun and the identification cards were located inside of a holster within a fanny pack in the center console of Griffin's vehicle. A check with the Luzerne County Sheriff's Department

revealed that Griffin did not have a valid license to carry a concealed weapon. *Id.,* at 25. Griffin was subsequently charged on May 26, 2009, in Luzerne County, with firearms not to be carried without a license in violation of 18 PA. CONS.STAT. ANN. § 6106(a)(1). *Id.*

Griffin filed a motion to suppress which was subsequently denied following a hearing by the trial court on January 19, 2010. Griffin was later found guilty of the charge of firearms not to be carried without a license on February 8, 2010. This timely appeal followed.

On appeal, Griffin raises the following issues for our review:

A. Whether the Court erred in denying the Defendant's Motion to Suppress based upon an illegal initial seizure of the Defendant's vehicle from a public parking lot?

B. Whether the Court erred in denying the Defendant's Motion to Suppress based upon a constitutionally invalid search warrant in that there was no indication that the information in the warrant was not stale?

*See* Appellant's Brief, at 4.

Our standard of review of a suppression court's denial of a motion to suppress is well settled:

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontra-

dicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lohr,* 715 A.2d 459, 461 (Pa.Super.1998) (quoting *Commonwealth v. Carlson,* 705 A.2d 468, 469 (Pa.Super.1998)).

 Griffin's first argument is, essentially, that the impoundment of his vehicle by the Wilkes–Barre Police Department and transportation to its headquarters prior to the issuance of a search warrant was a warrantless seizure in violation of his constitutional guarantees of security against unreasonable searches and seizures.[1] We disagree.

"The Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate." *Commonwealth v. Stewart,* 740 A.2d 712, 715 (Pa.Super.1999), *affirmed,* 568 Pa. 499, 798 A.2d 697 (2002) (internal citation omitted). "While the 'United States Supreme Court has recognized an automobile exception to the warrant requirement,' our own Supreme Court has not." *Commonwealth v. Casanova,* 748 A.2d 207, 211 (Pa.Super.2000), *appeal denied,* 570 Pa. 682, 808 A.2d 569 (2002).

 "Nevertheless, we have adopted a limited automobile exception under Article I, § 8." *Commonwealth v. McCree,* 592 Pa. 238, 252, 924 A.2d 621, 630 (2007). Specifically, a warrantless search of an automobile may be conducted "when there exists probable cause to search and exigent circumstances necessitating a search." *Casanova,* 748 A.2d at 211 (quot-

---

1. The constitutional guarantees are contained in Article I, Section 8 of the Pennsylvania Constitution and the Fourth and Fifteenth Amendments to the United States Constitution.

ing *Stewart,* 740 A.2d at 715). "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." *Stewart,* 740 A.2d at 718 (quoting *Commonwealth v. Dennis,* 417 Pa.Super. 425, 612 A.2d 1014, 1015–1016 (1992), *appeal denied,* 535 Pa. 654, 634 A.2d 218 (1993)). In determining whether probable cause exists, we must "consider the totality of the circumstances as they appeared to the arresting officer." *Id.* Additionally, "[t]he evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." *Commonwealth v. Lechner,* 454 Pa.Super. 456, 685 A.2d 1014, 1016 (1996).

■ "Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, or because there exists a threat of physical harm to police officers or other innocent individuals." *Stewart,* 740 A.2d at 717 (quotation omitted). When evaluating whether there are exigent circumstances which justify a warrantless search, "a court must balance the individual's right to be free from unreasonable intrusions against the interest of society in quickly and adequately investigating crime and preventing the destruction of evidence." *Id.* An officer may search an automobile for a weapon if he has a reasonable belief the suspect is dangerous and the suspect might gain control of a weapon. *Commonwealth v. Rosa,* 734 A.2d 412, 414–415 (Pa.Super.1999), *appeal denied,* 561 Pa. 693, 751 A.2d 189 (2000). Further:

> We have allowed warrantless seizures where police do not have advance knowledge that a particular vehicle carrying evidence of crime would be parked in a particular locale, ... the exigencies of

the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper. Conversely, when the police have ample advance information that a search of an automobile is likely to occur in conjunction with apprehension of a suspect, a warrant has been held to be required before the automobile may be searched.

*McCree,* 592 Pa. at 252–253, 924 A.2d at 630 (internal citations and quotation marks omitted).

Additionally, in *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978), our Supreme Court, in explaining the rationale for excusing the warrant requirement for an automobile under exigent circumstances, stated its reasons as two-fold: "[f]irst a vehicle is highly mobile and the likelihood is therefore great that it and its contents may never be found if police were prohibited from immobilizing it until a warrant can be secured.... Second one's expectation of privacy with respect to an automobile is significantly less than that relating to one's home or office." *Id.,* at 103, 106, 389 A.2d 101 (internal citations omitted). More importantly, the *Holzer* Court recognized that "where a warrantless seizure of the automobile follows arrest of its owner or driver, the intrusion into that person's privacy interest is even less offensive; since the person is to be taken into custody, he or she will suffer minimal further inconvenience from the temporary immobilization of the vehicle." *Id.*

As such, the Supreme Court in *Holzer,* opined that:

> It is reasonable, therefore, for constitutional purposes for police to seize and hold a car until a search warrant can be obtained where the seizure occurs after the user or owner has been placed into custody, where the vehicle is located on

public property, and where there exists probable cause to believe that evidence of the commission of a crime will be obtained from the vehicle.

*Id.,* at 103–104, 106, 389 A.2d 101 (citations omitted).

Based upon this Court's holding in *Holzer,* we are in agreement with the trial court that the warrantless seizure and search of Griffin's automobile was constitutionally permissible due to exigent circumstances. Thus, the trial court properly denied Griffin's motion to suppress. It is evident, based upon the testimony presented at the suppression hearing, that probable cause existed to believe that evidence, relating to the commission of the crime of impersonating a police officer, would be obtained from Griffin's vehicle. Moreover, Griffin's vehicle was only seized and towed from the public parking lot *after* Officer Wolfe was advised, via radio dispatch, that Griffin had been taken into custody by other Wilkes–Barre police officers. Griffin's vehicle was towed and placed in a secured area in the basement of police headquarters until a search warrant could be obtained for the vehicle. Accordingly, the trial court properly denied Griffin's motion to suppress, as the seizure of his vehicle was constitutionally permissible.

In his second issue raised herein on appeal, Griffin argues that the search warrant was invalid because it was based upon stale information. We disagree. It is well-established that, "[f]or a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance," and make this determination "on facts described within the four corners of the supporting affidavit, and closely related in time to the date of issuance of the warrant." *Commonwealth v. Stamps,* 493 Pa. 530, 535–536, 427 A.2d 141, 143 (1981). It is equally well established that "a reviewing court [must] pay great deference to an issuing authority's determination of probable cause for the issuance of a search warrant." *Commonwealth v. Woods,* 404 Pa.Super. 432, 590 A.2d 1311, 1313 (1991), *appeal denied,* 528 Pa. 637, 598 A.2d 994 (1991). Moreover, our Supreme Court has recognized that "affidavits supporting search warrants normally are prepared ..., 'by nonlawyers in the midst and haste of a criminal investigation,'" and, accordingly, said affidavits, "should be interpreted in a 'common sense and realistic' fashion rather than in a hypertechnical manner." *Stamps,* 493 Pa. at 537, 427 A.2d at 144. Accordingly, a determination as to what constitutes staleness "must be made on a case by case basis." *Id.*

Here, the information contained in the affidavit of probable cause to support the search warrant was based upon the arrest warrant issued in Berks County for Griffin for impersonating a police officer. The application clearly identifies the alleged criminal violation date as May 7, 2009, one week prior to the application for search warrant and affidavit of probable cause, which was presented to the magisterial district judge on May 14, 2009. The incident, which predicated the charges in Berks County, occurred less than a week prior to Griffin's arrest in Luzerne County. Accordingly, we are in agreement with the trial court that probable cause existed at the time of the search warrant's issuance, based upon the facts within the four corners of the supporting affidavit, all of which were closely related in time to the date of the warrant. As such, we are compelled to affirm the trial court's denial of Griffin's motion to suppress.

Judgment of sentence affirmed. Jurisdiction relinquished.