J-A21018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIC COOPER | |
| Appellant | No. 1268 EDA 2013 |

Appeal from the Judgment of Sentence December 19, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008618-2010

BEFORE: ALLEN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                        **FILED AUGUST 28, 2015**

Appellant, Eric Cooper, appeals from the December 19, 2012 judgment of sentence of 17½ to 60 years' imprisonment imposed after a jury found him guilty of one count each of third-degree murder, criminal attempt to commit murder, criminal conspiracy, firearms not to be carried without a license, possession of an instrument of crime (PIC), and aggravated assault.[1] After careful review, we affirm.

We summarize the relevant factual and procedural history of this case as follows. On March 9, 2007 at approximately 3:18 p.m., Jacque Warren

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A §§ 2502(c), 901(a), 903(c), 6106(a)(1), 907(a), and 2702(a), respectively.

drove a purple van with a white fender in the area around 945 South 53rd Street in Philadelphia. N.T., 10/3/12, at 160-162, 167; N.T., 10/4/12, at 135-136. After circling the block, Warren drove back up the street. N.T., 10/3/12, at 160. The sliding door of the van on the driver's side opened, and Nutta Verdier emerged and began shooting at Darrell Cobb.[2] *Id.* at 163, 169; N.T., 10/4/12, at 150. Appellant also exited the van from the passenger side and began shooting at Darrell Cobb. N.T., 10/3/12, at 163, 168; N.T., 10/4/12, at 151. A man identified as "GoGo"[3] also exited the van and began shooting in "a whole opposite way." N.T., 10/4/12, at 151.

Gary Autry Bigelow and Derrick Seals were outside an auto mechanic shop at 945 South 53rd Street at the time of the incident. N.T., 10/3/12, at 161. Bigelow was the stepson of the shop owner, and Seals was working as an auto mechanic at the shop. *Id.* at 160-161. During the incident, Bigelow was shot twice, once in the back and once in his left thigh. *Id.* at 73. He was taken to the Hospital of the University of Pennsylvania and was

---

[2] Cobb testified that upon shots being fired in his direction, he "shot once and [] ran down the street." N.T., 10/9/12, at 15.

Cobb and Warren were involved in a confrontation involving gunfire a week earlier, on March 2, 2007. There is conflicting testimony as to who fired shots that day, but there is no dispute that Appellant was not a part of this earlier encounter. *See* N.T., 10/4/12, at 126-128; N.T., 10/9/12, at 11-13, 47.

[3] GoGo was identified as Caliph Douglas in other portions of the record. *See*, *e.g.*, N.T. 10/9/12, at 10.

pronounced dead at 3:47 p.m. the same day. *Id.* at 72, 90. Seals ran to his vehicle and attempted to drive to safety; however, he was shot through the back windshield. *Id.* at 170. The bullet hit his right arm, and Seals suffered nerve damage from the wound; he is unable to work as an auto mechanic as a result of his injury. *Id.* at 175-176.

While investigating the incident, police obtained a search warrant for, and recovered, a purple van with a white fender in the area of 5400 Belmar Terrace on March 13, 2007. N.T., 10/1/12, at 53. The police learned the van was owned by Joyce Chavis, and her address was 5410 Belmar Terrace. *Id.* at 54. On March 22, 2007 at approximately 5:30 a.m., Detective Joseph McDermott of the Philadelphia Police was executing a search warrant and attempting to arrest an individual pursuant to an arrest warrant, for an unrelated matter, at 5427 Belmar Terrace. *Id.* at 55, 72-73. After the attempt at finding the suspect was unsuccessful, Detective McDermott observed that an indoor light was illuminated at 5410 Belmar Terrace. *Id.* at 57. He and Detective Maurizio[4] knocked on the door, and Chavis answered and identified herself as the van owner and confirmed she lived in the residence. *Id.* at 57-58. As the detectives were speaking to Chavis, a male appeared from the cellar stairway of the residence, looked in the direction of the detectives, and began running to the back of the residence.

---

[4] Detective Maurizio's first name does not appear in the certified record.

*Id.* at 58. Detective Maurizio ran through the house and detained the male. *Id.* Detective McDermott then heard running in the upstairs of the residence. *Id.* He ran up the stairs, encountered Appellant in the middle bedroom, and observed a box of Remington ammunition. *Id.* at 59-60. Detective McDermott then secured the premises and obtained a search warrant for the residence. *Id.* at 61-65. The search of the residence yielded, "one box of Remington .9-millimeter bullets, 25 total[;] [] one copper projectile; four loose .45 caliber rounds; one black extended pistol magazine; one clear sandwich baggie with four smaller baggies with numerous packets of an off-white chunky substance; and … $495[.00] U[nited] S[tates] currency." *Id.* at 65.

On August 2, 2010, the Commonwealth filed a criminal information charging Appellant with the aforementioned offenses as well as simple assault, recklessly endangering another person (REAP), and first degree murder.[5] On September 19, 2012, Appellant filed an omnibus pretrial motion seeking suppression of evidence based on, *inter alia*, an illegal search conducted without a warrant or probable cause. Appellant's Motion to Suppress, 9/19/12, at ¶ 9. The trial court held a hearing on Appellant's motion on October 1, 2012, and at the conclusion of the hearing, denied Appellant's motion. N.T., 10/1/12, at 84-85. On October 2, 2012, Appellant

_____

[5] 18 Pa.C.S.A. §§ 2701(a), 2705, and 2502(a), respectively.

and codefendant Verdier proceeded to a jury trial.  On October 12, 2012, the jury convicted Appellant of third-degree murder, criminal attempt to commit murder, criminal conspiracy, firearms not to be carried without a license, PIC, and aggravated assault.[6]  The charges of simple assault and REAP were *nolle prossed*.

On December 19, 2012, the trial court imposed an aggregate sentence of  17½ to 60 years' imprisonment.[7]  On December 27, 2012, Appellant filed a timely post-sentence motion.  The motion was denied by operation of law

_____

[6] The jury found Verdier guilty of third degree murder, criminal conspiracy, aggravated assault, criminal attempt, firearms not to be carried without a license, and PIC.  N.T., 10/12/12, at 28-29. Verdier appealed his conviction, but this Court dismissed said appeal on January 14, 2015 for failure to file a brief.  Superior Court Order, 307 EDA 2013, 1/14/15.

In a separate trial, Warner was convicted of third degree murder, criminal conspiracy, and two counts of aggravated assault for his involvement in the events of March 9, 2007.  On May 22, 2014, this Court affirmed his convictions, and our Supreme Court denied Warner's petition for allowance of appeal. ***Commonwealth v. Warner***, 104 A.3d 54 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 101 A.3d 786 (Pa. 2014).

[7] Specifically, the trial court sentenced Appellant to a term of ten to 40 years' imprisonment for third degree murder and a consecutive term of seven and one-half to 20 years' imprisonment for criminal attempt. Sentencing Order, 12/19/12, at 1.  The trial court determined the aggravated assault count merged with the murder count and imposed no further penalty on the remaining counts. ***Id.***

- 5 -

on April 29, 2013.  On April 30, 2013, Appellant filed a timely notice of appeal.[8]

On appeal, Appellant raises the following issue for our consideration.

> Whether the trial court erred by failing to grant Appellant's motion to suppress physical evidence where the Commonwealth's evidence established that the physical evidence was seized from Appellant's residence pursuant to a search warrant based entirely on information obtained as a result of an earlier pre-dawn search conducted in the absence of probable cause or exigent circumstances?

Appellant's Brief at 3.

We begin by noting our well-established standard of review over challenges to the denial of suppression motions.

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.  An appellate court, of course, is not bound by the suppression court's conclusions of law.

***Commonwealth v. Gary***, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).[9]

---

[8] The certified record discloses that the trial judge retired and did not order compliance with Pennsylvania Rule of Appellate Procedure 1925.

[9] To provide context, we have summarized the factual history of this case as developed through trial testimony.  However, in resolving Appellant's legal issue regarding his motion to suppress, we confine our review to the record of the suppression hearing.  ***See generally In re L.J.***. 79 A.3d 1073, 1085-1089 (Pa. 2013).

In Appellant's lone issue on appeal, he argues Detective McDermott entered Appellant's residence without a warrant and without probable cause. Appellant's Brief at 16. He argues, alternatively, "even if probable cause existed[,]" the entry was not permitted, as there were no exigent circumstances justifying police entry into the home. *Id.* at 17. The Commonwealth counters that there was "probable cause in light of the connection of the van used in the shooting to the residence, and exigent circumstances based on the sudden running of two men in the house where he was investigating a recent act of extreme violence." Commonwealth Brief at 11.[10]

"The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral detached magistrate." *Commonwealth v. Rowe*, 984 A.2d 524, 526 (Pa. Super. 2009) (citation omitted). Therefore, "[i]n a private home, searches and seizures without a

_____

[10] The Commonwealth first argues Appellant waived his argument based on probable cause because he did not contest probable cause at the hearing on his motion to suppress. Commonwealth Brief at 11. However, Appellant argued in his suppression motion that there was a lack of probable cause to enter Appellant's home and at the suppression hearing that there was "absolutely no basis" to permit a warrantless entry. Appellant's Motion to Suppress, 9/19/12, at ¶ 9; N.T., 10/1/12, at 7. Further, the trial court specifically concluded there was probable cause in this case, and Appellant raised the issue of the trial court's denial of his suppression motion in his post-sentence motion. N.T., 10/1/12, at 83; Appellant's Post Sentence Motion 12/27/12, at ¶ 13. Accordingly, Appellant sufficiently raised the issue before the trial court, and it is preserved for our consideration.

warrant are presumptively unreasonable." *Id.* (citation omitted). "Nonetheless, there are exceptions to the warrant requirement, including those situations where probable cause exists in conjunction with exigent circumstances." *Commonwealth v. Haynes*, 116 A.3d 640, 644 (Pa. Super. 2014) (citation omitted). "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." *Commonwealth v. Griffin*, 24 A.3d 1037, 1042 (Pa. Super. 2011) (citation omitted), *appeal denied*, 34 A.3d 82 (Pa. 2011). We do not ask whether the officer's belief was "correct or more likely true than false. Rather, we require only a *probability*, and not a prima facie showing, of criminal activity." *Commonwealth v. Thompson*, 985 A.2d 982, 931 (Pa. 2009) (citations and quotation marks omitted, italics in original). When assessing whether probable cause was present, "we must consider the totality of the circumstances as they appeared to the arresting officer." *Griffin*, *supra.* (citation and quotation marks omitted).

Further, our Supreme Court has outlined several factors for consideration in the determination of whether exigent circumstances exist.

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable,

(7) and the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Commonwealth v. Bowmaster*, 101 A.3d 789, 793 (Pa. Super. 2014), quoting *Commonwealth v. Roland*, 637 A.2d 269, 270-271 (Pa. 1994).

At the suppression hearing, the Commonwealth offered the testimony of Police Officer Michael Harris and Detective McDermott. Appellant did not present any evidence. Officer Harris testified that when he first observed the van, on March 11, 2007, he ran the vehicle information and discovered that it was registered to Joyce Chavis of 5410 Belmar Terrace. N.T., 10/1/12, at 41-44. Officer Harris was aware the van was being sought in connection with a homicide investigation, and he notified the Homicide Unit of its discovery. *Id.* at 41, 45.

Detective McDermott testified that he was investigating the death of Gary Autry Bigelow in March 2007 and had information that a 1998 Dodge purple and white minivan was used in the homicide. *Id.* at 51-53. His testimony was consistent with Officer Harris' regarding the ownership and residence connected with the van, as well as when the van was located and

seized. ***See id.*** at 53-54. He testified regarding the entry into Appellant's home as follows.

> Q. What address on Belmar Terrace [were you going to], do you recall?
>
> A. I think it was … 5427 Belmar Terrace.
>
> Q. And why were you going to that location?
>
> A. There was an arrest warrant for a male by the name of Tylil Porter. We were coming in with SWAT officers at that time.
>
> Q. And was the arrest warrant … related to the murder case? Explain to Her Honor.
>
> A. Your Honor, we had some ongoing shootings out there in Southwest, a dispute between certain corners. …
>
> [The trial court]:
>
> Q. So your arrest warrant was in connection to a different case?
>
> A. A different case, yes, Your Honor.
>
> …
>
> [The Commonwealth]:
>
> Q. Now, … the arrest warrant for Tylil Porter, was that a homicide or was it a -- [?]
>
> A. That was an aggravated shooting.
>
> …
>
> Q. Okay. All right. So what happened?
>
> A. We went there. We had negative results for Mr. Porter, so we resumed from there. … [W]e were on

the block of 5400 Belmar. Having knowledge about the van being recovered there, I then went to 5410. There was an indoor light illuminated inside.

Q. Okay.

A. So [] myself and Detective Maurizio, we knocked on the front door. I explained why we were there, that, you know, we were investigating a shooting and her van was recovered in the back driveway. And as we were talking, a male came out of the back stairway, Your Honor. I would call it a dining room. It was a living room, dining room.

[The trial court]:

Q. Excuse me. Did you get the identity of the woman you were talking to?

…

A. That was Joyce Chavis, yes, Your Honor.

Like I said, when we were talking to her, a male appeared in the shadows, in the back, between the kitchen area and the dining room area. It appeared that he came out of the cellar stairway, looked in our direction, and he tried to -- made a run to the back of the building.

…

A. He ran to the back of the building through the kitchen area. Detective Maurizio then ran through the living room, dining room and then stopped the male. I then was hearing running around on the second floor hallway. Being familiar with a row house, growing up in a row house, I heard what -- it sounded like the male ran into the middle bedroom. And I ran up the steps, ran into the middle bedroom. And there was a male lying in the bed fully clothed.

I started yelling at him, yelling at him "police, police." Ordered him up out of the bed. And that

> man was [Appellant] -- turned out to be [Appellant], the defendant.
>
> And the male in the kitchen we found out later was his brother, Corey Williams.
>
> Q. All right.
>
> A. While taking [Appellant] out of the middle bedroom, I could see … a box, which I'm familiar with. It said "Remington" on it. And it was an ammunition box, small cardboard box.

*Id.* at 55-59. Detective McDermott also testified that he had information that three shooters were involved in the events of March 9, 2007. *Id.* at 69.

The trial court made the following findings of fact and conclusions of law on the record, following the hearing.

> I find that the facts are in accordance with the testimony of Officer Harris and Detective McDermott whose testimony was clear and concise, supported by the relevant documents and exhibits and uncontradicted on cross-examination.
>
> I find that as to the ammunition, the motion is denied.
>
> I find that as a matter of law[,] the officers had probable cause when they saw -- they knew ahead of time that the van had been identified as having a connection with a homicide. They went to the home, and Ms. Chavis volunteered the fact that it was her van and they saw men running. They had a right to pursue the man who ran, and also to pursue the male who they heard upstairs.

*Id.* at 83. The trial court further found that "they had exigent circumstances that didn't require them to have a warrant." *Id.* at 85.

- 12 -

Instantly, we conclude the record supports the trial court's factual findings, and it did not err in denying Appellant's motion to suppress. *See Gary*, *supra.* Under the totality of the circumstances as they appeared to the officers, probable cause existed to believe that one or both of the fleeing males in the residence were involved in the March 9, 2007 shooting of Gary Autry Bigelow. *See Griffin*, *supra*. Detective McDermott testified that there were ongoing shootings in the neighborhood he was investigating, the van sought in connection with the March 9, 2007 shooting was located at Appellant's residence[11], and Chavis confirmed for the officers that she was the owner of the van and lived at that location. He further had information that there were at least three shooters involved in the incident. Significantly, upon Appellant's brother seeing Chavis speak with police officers, he "made a run to the back of the building." N.T., 10/1/12, at 58. At this time, Detective McDermott then heard "running around" on the second floor of the residence. *Id.* The facts and circumstances, as known to Detective McDermott, demonstrate a probability that the fleeing males had been engaged in criminal activity. *See Thompson*, *supra*.

Further, we conclude that in applying the *Roland* factors, exigent circumstances justified the warrantless entry into the home. Specifically, as to the first factor, the offense under investigation was a shooting in broad

---

[11] It is not in dispute that Appellant lived in the residence with Chavis, his grandmother. *See* Commonwealth Brief at 6; Appellant's Brief at 15.

daylight on the street, which resulted in a homicide. Moreover, police had been investigating other aggravated shootings in the same neighborhood. Under the second factor, it is reasonable for an officer to believe that a suspect would be armed given the nature of the offense under investigation. As to the third and fourth factors, we have concluded, under the totality of the circumstances, that there was probable cause to believe that persons in the residence were engaged in criminal activity, and the police corroborated that Appellant's residence was the one to which the van was registered. Therefore, when police saw and heard men fleeing, they had strong reason to believe the men inside the residence were connected with the crime. The fifth factor favors a determination of exigency because upon observing police, Appellant's brother fled and Detective McDermott heard running, indicating the suspects would escape if not swiftly apprehended. Regarding the sixth **Roland** factor, the initial encounter with Chavis was peaceable; however, the officers' entry may be characterized as sudden. Finally, the time was not in the middle of the night, but in the early morning hours. Thus, we conclude that because the majority of these factors weighs in favor of a determination of exigent circumstances, the police entry into Appellant's home was justified.[12] **See Bowmaster, supra.**

_____

[12] We note that nothing was seized at this time. Rather, following this encounter and the observance of the ammunition in Appellant's bedroom, *(Footnote Continued Next Page)*

Based on the foregoing discussion, we conclude the trial court did not err in denying Appellant's motion to suppress, as there was probable cause and exigent circumstances that justified the warrantless entry into Appellant's home. Accordingly, we affirm the December 19, 2012 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2015

*(Footnote Continued)* ─────────

police obtained a search warrant, which ultimately resulted in the discovery of incriminating evidence.   N.T., 10/1/12, at 65.