J-S75015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.Q., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF : COMMONWEALTH OF PENNSYLVANIA | |
| | No. 349 EDA 2016 |

Appeal from the Order January 4, 2016
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0002001-2015

BEFORE:  BOWES, MOULTON AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 15, 2017**

The Commonwealth appeals from the January 4, 2016, order suppressing evidence in this delinquency adjudication of S.Q., a minor, for conduct constituting possession of a firearm by a minor, conspiracy, and tampering with/fabricating physical evidence.[1]  We affirm.

The following facts were adduced at the suppression hearing.  On September 22, 2015, at approximately 8:01 p.m., Philadelphia Police Officers Matthew Lally and Collin Berg received a radio call of gunshots at

---

[1] A joint suppression hearing for Defendant and co-defendant Nasir Carter was held.  The evidence was not suppressed as to Carter, presumably because he had no expectation of privacy in the house that police entered without a warrant.

the intersection of North 27th Street and Clearfield Street in Philadelphia.[2]
When the two officers arrived at the scene, two males suffering from
gunshot wounds were lying in the middle of a basketball court. After
providing assistance to the wounded men, the officers surveyed the area
for potential witnesses for about twenty minutes.

The officers did not locate any witnesses to the shooting. Based
upon general information they gleaned at the scene, the officers learned
that the shooter "possibly went into a residence at 3239 North 26[th] Street."
N.T., 11/10/15, at 8.[3] However, they had no description of the shooter, no
information about the number of suspects involved, or any idea how many
were located at 3239 N. 26th Street. *Id*. at 24. Officer Berg confirmed at
the suppression hearing that he and his partner had no additional
information when they decided to set up surveillance at that address.

---

[2] Although Officer Berg originally testified that he and his partner arrived
at the scene at 9:40 p.m., when confronted with the crime scene log that
indicated that they arrived at 8:01 p.m. and left the scene at 10:00 p.m.,
he confirmed that the log was accurate.

[3] In a warrant obtained after the police action at issue herein, the
information was attributed to affiant Officer Earl Tillman, who attested that
he received a phone call from a corrections officer with whom he had
formerly worked. The former co-worker, who was known to the affiant,
told Officer Tillman that her mother lives on the 3200 block of 26th Street
and that the males who may have been involved ran into 3239 N. 26th
Street.

Similarly, Detective Joseph Cremen testified that had no identifying information on the suspects when he left the scene.

Officers Lally and Berg proceeded to 3239 North 26th Street in their unmarked police vehicle. Lights were on in the residence and, through the windows, they could see the shapes of people moving around. After surveilling the house for thirty to thirty-five minutes, the officers observed a male walking from Allegheny Avenue northbound on 26th Street. He entered the home under surveillance. Due to his distinctive white shorts covered in black diamonds and triangles, the officers recognized him as an individual they had observed near the basketball court after the shooting. *Id*. at 9, 25. The individual was later identified as Ramez Quarles, and there is no indication that the officers had any information linking him to the shooting.

Officer Berg proceeded around the back of 3239 N. 26th Street to determine if there were rear exits from the property. After ten minutes in the alley, he saw two males leave the house, enter the back alleyway, and head southbound. Officer Berg notified his backup, uniformed Officers Washington and McCuen,[4] who arrived almost immediately and blocked the South exit to the alleyway. Officer Berg remained at the North end of the alley. Upon seeing police in uniform, the two men turned around, ran back

_____

[4] The first names of the officers are not contained in the certified record.

towards the rear door to 3239 N. 26th Street. Officer Berg illuminated his flashlight and announced himself as a police officer as the two males re-entered the residence. *Id*. at 9-11.

By that time, approximately forty-five minutes to one hour had elapsed since the officers first responded to the shooting. Officer Berg testified that he believed that the males he had seen were involved in the shooting, they could possibly be armed, and he feared that they would destroy or eliminate evidence. *Id*. at 11. Consequently, Officer Berg followed them through the door at the rear of the residence. As he entered, another man attempted to run out the front door but was stopped by Officer Lally. Officers McCuen and Washington followed Officer Berg into the home through the rear door.

Officer Berg testified that they stopped four men in the living room, asked them to get on the ground and show their hands. They were cuffed. Then Officers Berg and Lally conducted a protective sweep of the residence to ascertain whether there were other individuals on the premises. Officer Berg discovered co-defendant Nasir Carter in an upstairs bathroom. He was sweating, breathing heavily, and appeared nervous. He was not wearing a shirt. The officer brought Carter downstairs and secured him with the others.

While continuing the sweep of the residence, the Officer went into a second floor rear bedroom. A little boy, approximately four years old,

followed the officer into the room and told the officer that the room belonged to him and his brother. The child stated there was no one there and that everything was okay.[5] As the officer opened the closet door, the boy started to close it. In that interval, the officer thought he saw a handgun on the top shelf of the closet. He observed what he believed was about one-quarter of an inch of the barrel protruding from an article of black clothing. The officer grabbed the closet door, pulled it open, and confirmed that there was a gun and cell phone located in the closet. However, he did not touch the items at that time. All of the males were transported to Northwest Detectives for further investigation of the firearm and a possible link to the shooting.

Officers remained on site to protect the scene. At 1:17 a.m. on September 23, 2015, Detective Stephen Grace obtained a search warrant for the 3239 North 26th Street residence, seeking any or all firearms or ballistic evidence, matching clothing or proof of residency. The search warrant was admitted into evidence at the suppression hearing as Exhibit C-6.[6] The detective executed the warrant at 2:45 a.m. *Id*. at 85-88. Defendant's mother, Twanna Sloan, testified that she resided at that

---

[5] Officer Berg testified that there was a thirty or thirty-five-year-old female, and two twelve to fifteen-year-old females in the home.

[6] No exhibits are contained in the certified record.

address with Defendant and her other children.[7] The detective recovered a Ruger .380 semiautomatic handgun from the shelf in the closet in the rear second floor bedroom.

Initially, Defendant was interviewed as a witness by Detective Ted Wolkiewicz. Thereafter, the detective received information from several sources that suggested that Defendant was involved in the shooting.[8] He was questioned a second time, and Defendant provided a statement that was introduced into evidence. Later, at approximately 3:00 a.m., he provided a second statement in which he acknowledged that he did not tell the truth in his prior statement. He told the Detective that he was at home when the shooting occurred. Defendant saw someone bring the gun into the house. Someone told him to go downstairs and get the gun and "put it

_____

[7] It is undisputed that Defendant resided with his mother and siblings at the N. 26th Street address, and thus, he had a reasonable expectation of privacy in the house.

[8] Although Detective Wolkiewicz testified he phoned Defendant's mother and received her permission to interview him, N.T. Motion Vol. I, 10/11/15, at 78, 79, 83, Defendant's mother, Ms. Sloan, testified that she was not contacted by the Detective and did not give permission to police to question her minor son. *Id*. at 105. Since Defendant prevailed at the suppression hearing, we must credit the evidence offered by Defendant's mother, Ms. Sloan, on his behalf.

up." He found it in the basement ceiling, wrapped in black pants, and he took it upstairs and put it in the closet in his room.[9] *Id*. at 75.

Defendant was charged with conduct constituting possession of a firearm by a minor, conspiracy, and tampering with/fabricating physical evidence. Defendant and Carter both moved to suppress the handgun and their incriminating statements. Following the January 4, 2016 suppression hearing, the Honorable Abram Frank Reynolds declined to suppress the evidence against Carter, but did suppress the evidence as to Defendant. The suppression court ruled that the police lacked probable cause and exigent circumstances to justify their warrantless entry of Defendant's home. All of the evidence acquired thereafter, including the gun and Defendant's statements to police, were the product of that illegal entry, illegal arrest techniques, and interrogation procedures. The court reasoned that, "the police had the home under their control and could have held all the parties inside the premises while they gave their idea of probable cause to a magistrate and secured a warrant." Pa.R.A.P. 1925(a) Opinion, 3/31/16, at 5.

---

[9] Co-defendant Carter initially told Detective Joseph Cremen that he went to the basketball court with two males identified only as Quadir and Kasim, but denied involvement in the shooting. He later admitted that when someone else began shooting, he pulled out his gun and shot it repeatedly. Then he ran to Defendant's house and hid the gun in the basement under a step. N.T., 11/10/15, at 12-15.

The Commonwealth filed this interlocutory appeal, certifying that the grant of the suppression motion impeded its ability to proceed with the delinquency adjudication against Defendant.[10]    The Commonwealth presents one issue for our consideration: "Did the trial court err in suppressing evidence where police reasonably pursued two fleeing, potentially armed suspects of a recent shooting into a home that contained a number of people?"  Commonwealth's brief at 4.

This Court reviews the grant of a suppression motion under well-established principles.  We consider the evidence of the defendant, as the prevailing party below, and any evidence of the prosecution that is uncontradicted in the context of the suppression record.  ***Commonwealth v. Walls***, 53 A.3d 889, 892 (Pa.Super. 2012).  "Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error."  ***Commonwealth v. Peterson***, 17 A.3d 935, 937 (Pa.Super. 2011) (internal quotation marks and citations omitted).  However, where the suppression court's determination turns on allegations of legal error, its

_____

[10] Pa.R.A.P. 311(d) provides that the "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."

conclusions of law are not binding on this Court. *Id*. Our Supreme Court has clarified that the scope of appellate review is limited to the evidence produced at the suppression hearing, not the entire record. *In the Interest of L.J.*, 79 A.3d 1073 (Pa. 2013).

.        The essential question presented for our review is whether the warrantless entry by police into the residence on 3239 N. 26th Street was lawful.  We start from the premise that the Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV.  The Pennsylvania Constitution similarly provides that "people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."  Pa.Const. Art. I, § 8.  Thus, as a general rule, "a warrantless search or seizure of persons, places, or possessions is unconstitutional under both the federal and Pennsylvania Constitution, unless both probable cause and exigent circumstances exist."  *Commonwealth v. Rushing*, 71 A.3d 939 (Pa.Super. 2013) (reversed on other grounds) (citing *Commonwealth v. Wright*, 961 A.2d 119, 137 (Pa. 2008).

"Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." **Commonwealth v. Griffin**, 24 A.3d 1037, 1042 (Pa.Super. 2011) (citation omitted). Additionally, "[t]he evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." **Griffin**, **supra** at 1042.

Moreover, it is well established that "probable cause alone will not support a warrantless search or arrest in a residence . . . unless some exception to the warrant requirement is also present. . . . [A]bsent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, **even** where probable cause exists." **Commonwealth v. Santiago**, 736 A.2d 624, 631 (Pa.Super. 1999) (citations omitted; emphasis in original). "Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, or because there exists a threat of physical harm to police officers or other innocent individuals." **Griffin**, **supra** at 1042 (quoting **Commonwealth v. Stewart**, 740 A.2d 712, 717). When evaluating whether there are exigent circumstances which justify a warrantless search, "a court must balance the individual's right to be free from unreasonable intrusions against the interest

of society in quickly and adequately investigating crime and preventing the destruction of evidence." **Griffin**, **supra** at 1042.

In **Commonwealth v. Roland**, 637 A.2d 269 (Pa. 1994), our Supreme Court explained that "[i]n determining whether exigent circumstances exist, a number of factors are to be considered," such as,

> (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.
>
> Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

**Roland**, 637 A.2d at 270–71 (quotations and citations omitted).

In the present case, the suppression court concluded that neither probable cause nor exigent circumstances existed. Pa.R.A.P 1925(a) Opinion, 3/31/16, at 5. In seeking to reverse that finding, the Commonwealth focuses on demonstrating exigent circumstances and pays short shrift to the suppression court's finding that probable cause was lacking. The only evidence of probable cause offered by the

- 11 -

Commonwealth was a tip from an unidentified person that the shooter possibly entered the residence at 3239 North 26th Street; the officers' observation of an individual who was standing at the fringe of the crime scene after the altercation entering that home; and two individuals starting to leave that residence at a late hour, but returning to the home upon seeing police. Commonwealth's brief at 12. The Commonwealth argues the suppression court failed to consider the totality of the circumstances and placed undue weight on the fact that the tip came from an unknown person.

The Commonwealth's evidence was insufficient to establish probable cause, *i.e.*, to warrant a prudent individual to believe that an offense was committed and the perpetrator was located in that residence. **See Griffin**, **supra**. The tip came from an unnamed source that there was a possibility that someone may have gone into 3239 N. 26th Street, and it was uncorroborated. The officer was not given a description of the shooter or of any other persons involved in the altercation, or any specific information regarding the persons who allegedly went into the residence at that address. **Id**. at 24. Although the police officers recognized an individual whom they had seen at the crime scene entering that residence later, that person was not implicated in the shooting. Additionally, the police had no reasonable belief that the two individuals who turned and ran back into the residence to avoid police were involved in the crime at hand. **See**

***Commonwealth v. Pegram***, 301 A.2d 695, 697 (Pa. 1973) (flight, in and of itself, cannot constitute probable cause to arrest).

We conclude that the suppression court's finding that there was no probable cause to enter the residence is factually and legally supported. Absent probable cause, we do not reach the issue of whether there were exigent circumstances that would justify the warrantless entry and search. Consequently, we affirm the trial court's order suppressing the gun and Defendant's statements.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/2017