J-A03023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JACK WESBY | |
| Appellee | No. 238 EDA 2015 |

Appeal from the Order December 18, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003534-2013

BEFORE: GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY MUNDY, J.: **FILED MARCH 03, 2016**

The Commonwealth appeals from the December 18, 2014 order granting the suppression motion filed by Appellee, Jack Wesby. After careful review, we reverse and remand for further proceedings.

On October 5, 2012, Wesby was arrested and charged with drug-related offenses. On May 15, 2014, Wesby filed a motion to suppress physical evidence obtained from the search of his apartment, Number 7, located at 2800 Cecil B. Moore Avenue, Philadelphia.

A suppression hearing commenced on November 6, 2014, at which the Commonwealth presented the sole witness, Philadelphia Police Officer David Rausch. Officer Rausch testified to being on duty on North 28th Street on the evening of October 5, 2012, and conducting surveillance for the illegal sale of narcotics. N.T., 11/6/14, at 8-10. Around 8:10 p.m., Officer Rausch

saw a black male, later identified as Samuel Harris, approach Wesby, engage in a brief conversation, and hand Wesby United States currency. *Id.* at 11. Wesby then entered the building at 2800 Cecil B. Moore Avenue, exited approximately 20 seconds later, and handed Mr. Harris a small item. *Id.* Officer Rausch relayed what he saw to back-up officers, who stopped Mr. Harris at 8:15 p.m. and recovered a packet of crack cocaine from him. *Id.*

Also at 8:15 p.m., a black male later identified as Andrew Albrooks approached Wesby and engaged in a brief conversation. *Id.* at 12. Mr. Albrooks handed Wesby United States currency; Wesby then entered the building on Cecil B. Moore Avenue, exited the building approximately 20 seconds later, and handed Mr. Albrooks a small item. *Id.* Officer Rausch again notified back-up officers, who stopped Mr. Albrooks and recovered "one clear knotted baggie containing alleged crack cocaine" from him. *Id.*

At approximately 8:20 p.m., another black male, later identified as John Savage, approached Wesby. *Id.* Mr. Savage engaged in conversation with Wesby and gave him money. *Id.* Once more, Wesby entered the building on Cecil B. Moore Avenue, and returned approximately 20 seconds later and handed Mr. Savage a small item, after which Officer Rausch notified back-up officers. *Id.* at 12-13. The back-up officers stopped Mr. Savage and recovered one packet of alleged crack cocaine from him. *Id.* at 13.

After the third transaction, another officer, Officer Cherry, stopped and arrested Wesby, and recovered from him thirty dollars, a cell phone, and keys to Apartment 7 in the Cecil B. Moore Avenue building. *Id.* at 13. Officer Rausch testified as follows.

> [Wesby] was arrested. He was in possession of keys, keys used to open Apartment No. 7. It was secured to make sure no one else was inside of it. And then the Narcotics Strike Force was notified to draw up a search and seizure warrant.

*Id.* at 16-17. Officer Rausch "had backup go in and secure the apartment building, Apartment No. 7, 2800 C.B. Moore Avenue." *Id.* Officer Rausch testified that the apartment was secured to preserve evidence, and "make sure no one else was inside of it." *Id.* at 16-17, 21-22. He also "notified Narcotics Strike Force for a search warrant." *Id.* at 13. While Wesby's apartment was secured, and prior to receiving and executing the warrant, the police did not recover any evidence from the apartment. *Id.* at 18. Officer Rausch testified, "there was evidence in plain view, but it was all kept where it was" until the execution of the warrant. *Id.*

Officer Rausch explained that he was not permitted to prepare the warrant because "departmental policy" was that "only Strike Force and Field Unit" prepared search warrants. *Id.* at 34. Officer Rausch "wrote up the whole affidavit part" for the warrant, which was issued for the building at 2800 Cecil B. Moore Avenue. *Id.* at 34-36. The warrant listed Wesby as the "owner, occupant, or possessor" of the property to be searched. *Id.* at 37.

Before Officer Rausch conducted the surveillance, he "had some information … of a specific apartment" in the Cecil B. Moore Avenue building, but during surveillance, he did not see Wesby enter a specific apartment when he went into the building. *Id.* at 16, 25. The search warrant and its supporting affidavit of probable cause were entered into evidence as Exhibit C-1. *Id.* at 19.

After hearing testimony from Officer Rausch as the sole witness, followed by argument from counsel, the suppression court took the matter under advisement. On December 18, 2014, the suppression court convened the parties and stated its determination that "the affidavit of probable cause failed to establish sufficient probable cause to search Apartment No. 7. Therefore, entry into the apartment, even after a search warrant was secured, was unlawful." N.T., 12/18/14, at 3. The suppression court entered a corresponding order granting Wesby's suppression motion.

The Commonwealth filed a timely appeal on January 15, 2015. With its notice of appeal, the Commonwealth certified that the suppression court's order would terminate or substantially handicap the prosecution of Wesby. *See* Pa.R.A.P. 311(d) (permitting Commonwealth appeal from an interlocutory order if it certifies that the order will terminate or substantially handicap the prosecution). The same day, the Commonwealth preemptively filed a statement of errors complained of on appeal pursuant to Pennsylvania

Rule of Appellate Procedure 1925(b).  The suppression court issued its Rule 1925(a) opinion on May 7, 2015.

On appeal, the Commonwealth presents the following issue for our review.

> Did the lower court err in suppressing 85 grams of crack cocaine and other evidence found in [Wesby's] apartment where there was probable cause to believe that contraband would be found therein, the police legitimately entered the apartment to prevent destruction of the evidence while they obtained a warrant, and the evidence was subsequently recovered pursuant to the lawfully issued warrant?

Commonwealth's Brief at 4.

The Commonwealth specifically asserts that the affidavit of probable cause supporting the search warrant "established that the police had received information that [Wesby] resided in a particular apartment in a particular building and was selling drugs at the location.  The application also detailed the fact that police confirmed through their own surveillance that [Wesby] was selling drugs right outside the apartment building[.]"  *Id.* at 9.  The Commonwealth further avers, "[t]he fact that police entered the apartment prior to the approval of the warrant did not provide a basis for suppressing the evidence.  The police lawfully entered the property to secure it because they legitimately feared someone inside might have learned of

[Wesby's] arrest and would destroy the evidence before the warrant arrived." ***Id.***[1]

Our standard of review in addressing a challenge to the suppression court's granting of a suppression motion is well settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Miller***, 56 A.3d 1276, 1278-1279 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." ***Commonwealth v. Brown***, 996 A.2d 473, 476 (Pa. 2010) (citation omitted).

With regard to search warrants, we have explained the following.

> It is well-established that for a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance, and make this determination on facts described within the four corners of the supporting

---

[1] Wesby elected not to file a brief in this matter.

affidavit, and closely related in time to the date of issuance of the warrant. It is equally well established that a reviewing court [must] pay great deference to an issuing authority's determination of probable cause for the issuance of a search warrant. Moreover, our Supreme Court has recognized that affidavits supporting search warrants normally are prepared ..., 'by nonlawyers in the midst and haste of a criminal investigation,' and, accordingly, said affidavits, should be interpreted in a 'common sense and realistic' fashion rather than in a hypertechnical manner.

**Commonwealth v. Griffin**, 24 A.3d 1037, 1043 (Pa. Super. 2011) (some quotation marks and citations omitted). "It must be remembered that probable cause is based on a finding of the probability of criminal activity, not a *prima facie* showing of criminal activity." **Commonwealth v. Luton**, 672 A.2d 819, 822 (Pa. Super. 1996).

Here, the affidavit of probable cause attached to the application for the search warrant reads as follows.

ON 10-5-12 AT APPROXIMATELY 7:50PM P/O RAUSCH SET UP A PLAIN CLOTHES SURVEILLANCE FOR THE ILLEGAL SALES OF NARCOTICS IN THE 1600 BLOCK OF N. 28TH ST. P/O RAUSCH HAD RECEIVED INFORMATION THAT A B/M, NAME JACK WESBY, WHO LIVED AT 2800 C.B. MOORE AVE APT 7, WAS INVOLVED IN ILLEGAL NARCOTICS SALES AT THAT LOCATION.

UPON SETTING UP MY SURVEILLANCE I OBSERVED A B/M, LATER ID'D AS JACK WESBY, WEARING A BLUE POLO SHIRT AND BLUE JEANS STANDING IN THE 1600 BLOCK OF N. 28TH STREET.

AT APPROXIMATELY 8:10PM A B/M, LATER ID'D AS SAMUEL HARRIS, WEARING A GRAY HOODY AND BLUE JEANS APPROACHED WESBY. THE TWO ENGAGED IN A BRIEF CONVERSATION WHICH

- 7 -

RESULTED IN HARRIS HANDING WESBY U.S. CURRENCY WHICH HE ACCEPTED AND IN RETURN WESBY ENTERED 2800 C.B. MOORE AVE FOR APPROXIMATELY 20 SECONDS. WESBY RETURNED AND HANDED HARRIS A SMALL ITEM WHICH HARRIS ACCEPTED. HARRIS THEN WALKED EB ON 2800 C.B. MOORE AVE. BACKUP WAS NOTIFIED.

AT APPROXIMATELY 8:15PM HARRIS WAS STOPPED IN THE 2700 BLOCK [OF] C.B. MOORE AVE BY SGT. YOUNG WHO RECOVERED 1 YELLOW TINTED HEATSEALED PACKET CONT. AN OFF WHITE CHUNKY SUBSTANCE ALLEGED CRACK COCAINE FROM HARRIS' LEFT FRONT JEANS POCKET WHICH WAS PLACED ON PR# 3070808. HARRIS WAS TRANS TO THE 22ND DISTRICT FOR PROCESSING.

AT APPROXIMATELY 8:15PM WESBY WAS APPROACHED BY A B/M, LATER ID'D AS ANDREW ALSBROOKS[2], WEARING A WHITE SHIRT AND BLUE JEAN SHORTS. THE TWO ENGAGED IN A BRIEF CONVERSATION WHICH RESULTED IN ALSBROOKS HANDING WESBY U.S. CURRENCY WHICH HE ACCEPTED AND AGAIN ENTERED 2800 C.B. MOORE AVE FOR APPROXIMATELY 20 SECONDS. WESBY RETURNED AND HANDED ALSBROOKS A SMALL ITEM. ALSBROOKS THEN WENT EB ON 2800 C.B. MOORE AVE. BACKUP WAS NOTIFIED.

AT APPROXIMATELY 8:19PM ALSBROOKS WAS STOPPED BY P/O AYERS IN THE 1600 BLOCK OF 27TH ST. AND RECOVERED 1 CLEAR SMALL KNOTTED BAGGIE CONT. AN OFF WHITE CHUNKY SUBSTANCE ALLEGED CRACK COCAINE FROM ALSBROOKS' SHORTS POCKET WHICH WAS PLACED ON PR# 3070809. ALSBROOKS WAS TRANS TO THE 22ND DISTRICT FOR PROCESSING.

_____

[2] The proper spelling of the individual's surname is not clear from the record; the name is spelled "Albrooks" in the November 6, 2014 notes of testimony, and "Alsbrooks" in the affidavit of probable cause.

AT APPROXIMATELY 8:25PM WESBY WAS APPROACHED BY A B/M, LATER ID'D AS JOHN SAVAGE, WEARING A GRAY SLEEVELESS SHIRT AND BLACK SWEAT PANTS. THE TWO ENGAGED IN A BRIEF CONVERSATION WHICH RESULTED IN SAVAGE HANDING WESBY U.S. CURRENCY WHICH HE ACCEPTED AND AGAIN WENT INTO 2800 C.B. MOORE AVE FOR APPROXIMATELY 20 SECONDS. WESBY RETURNED AND HANDED SAVAGE A SMALL ITEM. SAVAGE AND WESBY THEN SAT ON THE CORNER OF 28TH AND C.B. MOORE.

AT APPROXIMATELY 8:30PM RAUSCH HAD BACKUP COME IN AND STOP SAVAGE AND WESBY.

SAVAGE WAS STOPPED BY P/O WALLACE WHO RECOVERED 1 YELLOW TINTED HEATSEALED PACKET CONT. AN OFF WHITE CHUNKY SUBSTANCE ALLEGED CRACK COCAINE FROM SAVAGE'S LEFT HAND WHICH WAS PLACED ON PR# 3070810.

WESBY WAS STOPPED BY P/O CHERRY WHO RECOVERED 30 DOLLARS U.S. CURRENCY WHICH WAS PLACED ON PR# 3070811 AND 1 CELL PHONE WHICH WAS PLACED ON PR# 3070812.

RAUSCH THEN HAD BACKUP GO TO 2800 C.B. MOORE APT 7 AND SECURE THE LOCATION. BACKUP WENT TO APT 7, KNOCKED ON THE DOOR AND ANNOUNCED PRESENCE. THERE WAS NO ANSWER FROM INSIDE SO POLICE USED THE KEYS THAT WERE IN THE POSSESSION OF WESBY AND ENTERED THE APARTMENT, MADE SURE THE SCENE WAS SECURE, THEN NOTIFIED NARCOTICS STRIKE FORCE IN ANTICIPATION OF A SEARCH WARRANT.

BOTH SAVAGE AND WESBY WERE TRANS TO 22ND DISTRICT FOR PROCESSING.

NARCOTICS RECOVERED FROM HARRIS, ALSBROOKS, AND SAVAGE WERE FIELD TESTED BY P/O RAUSCH POSITIVE RESULTS FOR COCAINE BASE.

Commonwealth's Exhibit C-1, Application for Search Warrant, Affidavit of Probable Cause, 10/5/12, at 1-2.

Based on the hearing testimony of Officer Rausch and the affidavit of probable cause, the suppression court concluded as follows.

> The subject affidavit includes a detailed account of Officer Rausch's observations of the alleged narcotics sales. It does not, however, indicate how, or when, Officer Rausch came to believe that Apartment 7 contained evidence related to those transactions. The affidavit states only that:
>
> P/O RAUSCH HAD RECEIVED INFORMATION THAT A B/M, NAME JACK WESBY, WHO LIVED AT 2800 C.B. MOORE AVE APT 7, WAS INVOLVED IN ILLEGAL NARCOTICS SALES AT THAT LOCATION.
>
> The search warrant relied heavily on this "information" received by Officer Rausch. But this blanket assertion alone left the issuing authority "no substantial basis on which to assess the reliability of the information provided to the affiant[]." **See Commonwealth v. Torres**, 764 A.2d 532, 538 (Pa. 2001). Furthermore, the affidavit does not give any indication of when Officer Rausch received the information about Apartment 7, leaving the issuing authority unequipped to evaluate whether the information had grown stale. **See [Commonwealth v.] Hoppert**, 39 A.3d at 363. Because the warrant was issued without a sufficient showing of probable cause to search Apartment 7, any physical evidence recovered from the search was properly suppressed.

Suppression Court Opinion, 5/7/15, at 6 (footnote omitted).

Upon careful scrutiny of the uncontradicted facts of record, as well as pertinent legal authority in conducting our *de novo* review, we are constrained to disagree with the suppression court. Applying our standard of

review, and giving "great deference" to the authority issuing the search warrant, we recognize our Supreme Court's mandate.

> In considering an affidavit of probable cause, the issuing magistrate must apply the "totality of the circumstances test" which requires her to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit … including the veracity of and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. A court reviewing a search warrant determines only if a substantial basis existed for the magistrate to find probable cause.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1031 (Pa. 2012) (quotation marks and citations omitted).

Instantly, the facts described within "the four corners of the supporting affidavit" demonstrate "a substantial basis" upon which the issuing authority could find probable cause. *Johnson, supra; Griffin, supra.* Furthermore, the suppression court erred in concluding that "[i]t was irrelevant that the officers ultimately entered Apartment 7 using a key found on [Wesby], as that act was part of the unlawful entry itself." Suppression Court Opinion, 5/7/15, at 4, n.5. The totality of the circumstances in this case, including the key to Apartment 7 recovered from Wesby, establishes the "fair probability" that contraband, *i.e.*, additional evidence of Wesby's illegal sale of cocaine, would be found in Apartment 7, 2800 Cecil B. Moore Avenue, consistent with Officer Rausch's firsthand observation of Wesby's three transactions involving his entry and exit from 2800 Cecil B. Moore Avenue.

- 11 -

Using a practical, common sense assessment of the facts of record from both the supporting affidavit of probable cause and Officer Rausch's testimony, we agree with the Commonwealth that "inserting a key into a lock … does not constitute a search[.]" Commonwealth's Brief at 16-17; **see also Commonwealth v. Harvard**, 64 A.3d 690, 695-696 (Pa. Super. 2013) (concluding an officer's use of a key fob to unlock a car is not a search within the meaning of the Fourth Amendment).. Based on the foregoing, we conclude that the suppression court erred in its "hypertechnical" reading of the affidavit. **See Griffin**, **supra**.

Having established that the search warrant was supported by probable cause, we turn to the Commonwealth's assertion that the police legitimately entered Apartment 7 to secure any evidence pending the execution of the warrant. The suppression court found that "no exigent circumstances justified the warrantless entry." Suppression Court Opinion, 5/7/15, at 4. In challenging this finding, the Commonwealth cites **Commonwealth v. Frank**, 605 A.2d 356 (Pa. Super. 1992) (warrantless search was supported by exigent circumstances, where police had just arrested outside defendant's apartment a person who was participating with defendant in drug distribution network, and risk existed that defendant had observed arrest and would succeed in destroying critical evidence, police had not manufactured the exigent circumstances, and police had already applied for a warrant and did not conduct more than preliminary search until it was

obtained). We additionally note that the United States Supreme Court has held that where probable cause exists to support the issuance of a warrant, police may secure the residence of an individual to preserve the loss of evidence while a warrant is diligently sought, and that given the nature of the intrusion and the law enforcement interest at stake, the brief seizure of the premises is permissible. *Illinois v. McArthur*, 531 U.S. 326, 331-332 (2001). However, our review of Pennsylvania case law militates against a finding of exigent circumstances in this case.

> Absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists. *Commonwealth v. Santiago*, 736 A.2d 624 (Pa. Super. 1999).
>
>> It is well-settled that exigent circumstances excusing the warrant requirement arise where the need for prompt police action is imperative. Exigent circumstances can be generated when evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons. Whether exigent circumstances exist depends on 'an examination of all of the surrounding circumstances in a particular case.'
>
> *Commonwealth v. Peterson*, 408 Pa.Super. 22, 596 A.2d 172, 179 (1991) *quoting Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616, 618 (1983).
>
>> In determining whether exigent circumstances exist, a number of factors are to be considered. Among the factors to be

- 13 -

> considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises to be entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.
>
> *Commonwealth v. Roland*, 535 Pa. 595, 599, 637 A.2d 269, 270–71 (1994). Other factors may also merit consideration, such as whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. *Id.*

*Commonwealth v. Griffin*, 785 A.2d 501, 505-506 (Pa. Super. 2001).

It is undisputed that Officer Rausch observed three interactions between Wesby and individuals who were immediately and subsequently stopped and found to possess cocaine. The three interactions occurred quickly and in close proximity to Wesby's residence at 2800 C.B. Moore Avenue, which he entered and exited in 20 second increments when transacting with the three individuals. Officer Rausch testified that he sought to have Apartment 7 secured "to preserve evidence, [and to] make sure no one else was in the apartment." N.T., 11/6/14, at 17. Yet Officer Rausch "had no knowledge of who else was in the apartment," *id.*, and did not otherwise articulate any other factors to demonstrate "the likelihood that

- 14 -

evidence would be destroyed" while police took the time to obtain a warrant, or "a danger to police or other persons inside or outside" the apartment. *See Commonwealth v. Melendez*, 676 A.2d 226, 231 (Pa. 1996) (mere speculation that evidence may be destroyed because suspects may learn of police activity is inadequate to justify a warrantless entry, and in any event, police may not bootstrap themselves into exigencies by their own conduct). Accordingly, we find no error of law in the suppression court's conclusion that police secured Apartment 7 in the absence of exigent circumstances. Our analysis, however, does not end with the lack of exigency, because we agree with the Commonwealth's assertion that even if the police improperly entered Apartment 7 before obtaining the search warrant, suppression of the evidence was not justified because the evidence was not seized until the subsequently issued warrant was executed. Commonwealth's Brief at 26-29, *citing* **Commonwealth v. Byrd**, 987 A.2d 786, 794 (Pa. Super. 2009) (suppression of evidence is not available as a remedy for unlawful police conduct where the evidence was obtained by means independent of the unlawful police conduct). The record is uncontroverted that "all of the evidence was seized pursuant to the lawfully issued warrant," and the initial entry by police into the apartment "did not play a role in the obtaining of the warrant...," such that suppression was not appropriate. Commonwealth's Brief at 28-29.

In sum, we conclude that the suppression court erred in suppressing the evidence found in Wesby's apartment where there was probable cause to believe that contraband would be found there, and although the police entered Apartment 7 in the absence of exigent circumstances, the evidence was subsequently recovered pursuant to the lawfully issued warrant. Accordingly, we reverse the order granting suppression, and remand this case for further proceedings, consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016