J-S07029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIC JARRELL MCLAURIN | : | |
| | : | |
| Appellant | : | No. 804 MDA 2018 |

Appeal from the Judgment of Sentence Entered May 2, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000650-2016

BEFORE: OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: FEBRUARY 5, 2020**

Dominic Jarrell McLaurin appeals from his judgment of sentence, imposed on May 2, 2018, following a jury trial resulting in convictions for possession with intent to deliver a controlled substance, possession of a controlled substance, possession of drug paraphernalia, and criminal use of a communications facility.[1] McLaurin challenges the denial of his motion to suppress evidence and the admission of evidence regarding a prior statement. We affirm.

We derive the following statement of facts and procedural history from the trial court's opinions. *See* Tr. Ct. Suppression Op., 4/11/17; Tr. Ct. Pa.R.A.P. 1925(b) Op., 9/24/18. On January 6, 2016, Troopers Tyson Havens

---

* Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16), (32), (30), and 35 P.S. § 7512(a), respectively.

and Edward Dammer of the Pennsylvania State Police were on patrol in Williamsport, Pennsylvania when they encountered McLaurin in a black Chevy Impala sedan in the parking lot of a Nittany Minute Mart. McLaurin, along with another man, were rummaging around in the vehicle with all of the doors open. The troopers, surmising that McLaurin and the other individual were looking for drugs, pulled into a parking spot parallel to the Chevy Impala, but several spots away. When Trooper Havens approached the vehicle, McLaurin was in the driver's seat and the other individual was already inside the convenience store. Trooper Havens questioned McLaurin, through the driver's side window, regarding the registration of the vehicle and whether he had "dropped a joint." McLaurin denied that accusation and instead asserted that he had dropped paperwork.

Trooper Havens then indicated that he smelled marijuana, but McLaurin denied having any in the car. At this point, Trooper Dammer approached the front passenger window of the vehicle, and Trooper Havens directed McLaurin to lower the passenger window. After McLaurin complied, Trooper Dammer also stated that he smelled marijuana. Before they could inquire further, the troopers noticed that the second individual, who had gone into the convenience store, was attempting to walk away briskly. Trooper Dammer returned to the police cruiser and unsuccessfully pursued the individual. Trooper Dammer returned to the scene, parking directly behind the Chevy Impala.

Trooper Havens continued to question McLaurin and request identification, while Trooper Dammer reiterated that he smelled marijuana. Trooper Dammer proceeded to lean into the passenger side of the vehicle, so that his entire upper body was inside the car. It was from this position that Trooper Dammer spotted eight packets of heroin in the front passenger door; no marijuana was ever found. The troopers removed McLaurin from the car and searched it. In addition to the heroin, they seized $1,626.00 in cash and a cell phone. After obtaining a warrant, Trooper Havens discovered incriminating information on the cell phone.

McLaurin was charged with the aforementioned offenses, and before trial, he moved to suppress the heroin and cell phone discovered in the car. The trial court denied the motion, determining that both troopers had probable cause to search McLaurin's car. On December 28, 2017, the Commonwealth filed a notice of intent to introduce certified records of regularly conducted activity, pursuant to Pa.R.E. 902(11). In response, McLaurin filed a motion to preclude the admission of evidence concerning statements he made on March 1, 2017, while being processed for admission to Lycoming County prison. Specifically, McLaurin objected to the admission of evidence of statements he made to Prison Nurse Cynthia Mann denying any personal use of street drugs and the associated intake records from the prison. McLaurin's arguments centered on hearsay and relevance contentions. The trial court also denied this motion.

After a jury convicted McLaurin in February 2018, the trial court imposed an aggregate sentence of three to ten years' incarceration. The instant timely appeal followed.[2] McLaurin filed a court ordered Pa.R.A.P. 1925 (b) statement and the trial court filed a responsive opinion Pa.R.A.P. 1925(a) opinion, which also referred to the court's earlier opinion issued in support of the court's denial of McLaurin's suppression motion. Initially, appointed counsel for McLaurin filed an *Anders*[3] brief, ostensibly asserting that McLaurin's issues were frivolous. However, this Court concluded that counsel's *Anders* brief was deficient and therefore remanded the case and directed counsel to file either an advocate's brief or a proper *Anders* brief. After receiving an extension from this Court, counsel filed the instant advocate's brief wherein McLaurin raises the following issues for our review:

> I   Whether the trial court's factual finding were supported by the record, and thus the trial court misapplied the law and erred in denying [McLaurin's] motion to suppress?
>
> II  Whether the trial court erred in its decision to allow the introduction of hearsay evidence in the form of testimony by a prison nurse and admission of the related intake assessment?

McLaurin's Br. at 7.

In his first issue, McLaurin contends that the trial court erred by failing to grant his motion to suppress evidence obtained incident to the troopers'

---

[2] This Court vacated and reinstated this appeal twice due to defense counsel's failure to file a timely docketing statement.

[3] *Anders v. California*, 386 U.S. 738 (1967).

search of his car. The thrust of McLaurin's argument is twofold. First, McLaurin asserts that Trooper Havens' initial interaction with him constituted an investigatory detention rather than a mere encounter, as characterized by the trooper. To this end, McLaurin avers that the factual circumstances surrounding his initial interaction with the troopers would cause a reasonable person to believe that he was not free to leave and in fact was subject to a detention. McLaurin argues that when the troopers approached his car they parked their vehicle directly behind his, thereby blocking his means of egress. Further, McLaurin maintains that he was also blocked from leaving by the fact that Trooper Havens approached the closed driver's side door of his car.

McLaurin likens the facts of the instant case to those presented in **Commonwealth v. DeHart**, 745 A.2d 633 (Pa.Super. 2000). In that case, troopers approached a stopped vehicle in their cruiser and asked the occupants, "[W]hat's going on here?" **Id.** at 635. This Court concluded that although that interaction was a mere encounter, once the troopers got out of their vehicle and approached the defendant's car, the interaction became an investigative detention. **Id.** at 638.

Here, McLaurin cites **DeHart** to argue that Troopers Havens and Dammer subjected him to an investigative detention by alighting from their vehicle and approaching the closed driver's side door of his vehicle. Further, McLaurin points out that the troopers observed him and another unidentified individual only rummaging around in the vehicle before the troopers

approached. Thus, McLaurin asserts that the troopers did not have reasonable suspicion to support their investigative detention of him. Accordingly, McLaurin maintains that the trial court erred by denying his motion to suppress all evidence emanating from his allegedly unlawful investigative detention.

The second element of McLaurin's suppression argument concerns his contention that the troopers did not have probable cause to search his car. While noting that both troopers stated that they smelled marijuana coming from his vehicle, McLaurin posits that this olfactory observation could not possibly be true because no marijuana was ultimately found in his car. He argues that the trial court's reliance upon ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014) (plurality), and ***Commonwealth v. Stoner***, 344 A.2d 633 (Pa.Super. 1995), is misplaced. He contends that those cases are distinguishable because although the officers at issue in both of those cases were deemed to have probable cause to search vehicles after noting the odor of marijuana, in both cases marijuana was ultimately found.

On review of an order denying a motion to suppress, we "determine whether the certified record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." ***Commonwealth v. Griffin***, 24 A.3d 1037, 1041 (Pa.Super. 2011). In making this assessment, we "consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted." ***Id.*** If the record

supports the factual findings of the suppression court, we reverse "only if there is an error in the legal conclusions drawn from those factual findings." *Id.* Whether an officer's undisputed testimony reflects that a seizure occurred is a question of law. *Commonwealth v. Au*, 42 A.3d 1002, 1006 (Pa. 2012).

McLaurin challenges the characterization of his initial encounter with the troopers as constituting a "mere encounter." "The Fourth Amendment to the United States Constitution and Article 1, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. Young*, 162 A.3d 524, 527-28 (Pa.Super. 2017). Citizens' interactions with police fall into one of three categories: (1) mere encounters, (2) investigative detentions, or (3) custodial arrests. *Id.* at 528. A "mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen." *Id.* A mere encounter does not require the subject to stop or respond, and does not require the police to have any level of suspicion. *Id.* at 529. An "investigative detention" "subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an arrest." *Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa.Super. 2007). An investigative detention must be supported by reasonable suspicion of criminal activity. *Id.* A "custodial detention" must be supported by probable cause. *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014).

An investigative detention occurs "[w]hen a police officer temporarily detains an individual by means of physical force or a show of authority." **Commonwealth v. Baldwin**, 147 A.3d 1200, 1203 (Pa. Super. 2016). "To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter." **Commonwealth v. Reppert**, 814 A.2d 1196, 1201-02 (Pa.Super. 2002) (*en banc*). Factors relevant to this analysis include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." **Commonwealth v. Livingstone**, 174 A.3d 609, 621 (Pa. 2017) (quoting **United States v. Mendenhall**, 446 U.S. 544, 554 (1980)). However, no single factor dictates "the ultimate conclusion as to whether a seizure has occurred." **Id.** (quoting **Commonwealth v. Strickler**, 757 A.2d 884, 890 (Pa. 2000)).

However, a seizure does not occur when officers merely approach a person in public and request information, so long as the officers' behavior does not "convey a message that compliance with their requests is required." **Lyles**, 97 A.3d at 303 (quoting **Florida v. Bostick**, 501 U.S. 429, 437 (1991)). An officer may thus approach a parked vehicle to request information

from the occupants without having any level of suspicion. *Id.* For example, in *Au*, the Pennsylvania Supreme Court concluded that an officer's request for identification was a mere encounter. The court explained that the officer did not "activate the emergency lights on his vehicle; position his vehicle so as to block the car that Appellee was seated in from exiting the parking lot; brandish his weapon; make an intimidating movement or overwhelming show of force; make a threat or a command; or speak in an authoritative tone." 42 A.3d at 1008 (internal citations omitted).

McLaurin also challenges the trial court's determination concerning probable cause. "As a general rule, for a search to be reasonable under the Fourth Amendment [of the United States Constitution] or Article I, Section 8 [of the Pennsylvania Constitution], police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search." *Gary*, 91 A.3d at 107. An exception to this general rule is the search and seizure of vehicles. *Id.* Pennsylvania constitutional law governing warrantless searches of motor vehicles is coextensive with federal law. *Id.* at 138. A warrantless search of a vehicle is appropriate where officers have probable cause to search. *Id.* "No exigency beyond the inherent mobility of a motor vehicle is required." *Id.*

"Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and the defendant has committed it."

***Commonwealth v. Griffin***, 24 A.3d 1037, 1042 (Pa.Super. 2011) (citation omitted). Thus, we must consider the totality of the circumstances in the view of the arresting officer. ***Id.*** To this end, we do not inquire about whether an officer's belief was "correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity." ***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (citation and emphasis omitted). Particularly relevant to a probable cause analysis is an officer's experience as it related to the topic underlying the search or seizure. ***Id.*** at 935. Further, in Pennsylvania "plain smell" is akin to "plain view" in the context of a probable cause analysis. ***Commonwealth v. Stoner***, 344 A.2d 633, 635 (Pa.Super. 1975) (holding that the smell of marijuana is sufficient to establish probable cause).

In this case, contrary to McLaurin's assertion, the troopers initially parked their vehicle several parking stalls away from McLaurin's vehicle. Thus, McLaurin's argument that he was "blocked in" by the troopers is unavailing. Further, prior to approaching McLaurin's car, the troopers did not activate the emergency lights on their vehicle. When Trooper Havens approached McLaurin, on the driver's side of McLaurin's vehicle, he did not brandish his weapon, make an intimidating show of force, or speak in an authoritative tone. Therefore, we conclude that the record supports the trial court's determination that the trooper's initial contact with McLaurin constituted a mere encounter. ***See Lyles***, 97 A.3d at 303; ***Au***, 42 A.3d at 1006.

Next, McLaurin asserts that the troopers' ultimate failure to find any marijuana in his vehicle negates any probable cause they had to search his car based on their purported detection of the odor of marijuana. This argument is unavailing because this Court must consider the totality of the circumstances, at the relevant time and from the perspective of the officer at issue, when reviewing a challenge to a finding of probable cause. **See Griffin**, 24 A.3d at 1042. Thus, whether Trooper Havens and Trooper Dammer ultimately found marijuana is of no moment. **See Thompson**, 985 A.2d at 931. Here, the troopers' testimony that they smelled marijuana – which the suppression court credited – was sufficient to supply the troopers with probable cause to search McLaurin's car. **See id.**; **Stoner**, 344 A.2d at 635; **Gary**, 91 A.3d at 107. Accordingly, we hold that the trial court did not err by denying McLaurin's motion to suppress. **Griffin**, 24 A.3d at 1041. Thus, McLaurin's first issue warrants no relief.

In his second issue, McLaurin asserts that the trial court erred by admitting the testimony of Nurse Mann and the associated intake records from the Lycoming County prison. The evidence at issue is McLaurin's statement to Nurse Mann, upon his intake at the prison, that he was not a user of street drugs. McLaurin asserts that Mann's testimony regarding his statements to her constituted inadmissible hearsay. He also contends that the trial court erred in admitting the evidence because it was more prejudicial than probative. He avers that the fact that he was not using street drugs on March

1, nearly two months after the troopers found heroin in his car on January 6, 2019, was not probative about any drug habit he may have had on the night in question. Instead, according to McLaurin, the admission of his statement only served to prejudice him by leading the jury to believe that the drugs he had in his vehicle must not have been for his personal use, but instead for purposes of distribution.

"A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa.Super. 2013) (citing *Commonwealth v. Cook*, 676 A.2d 639, 647 (Pa. 1996)). We do not disturb a ruling admitting evidence "unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Id.* (quoting *Commonwealth v. Minich*, 4 A.3d 1063, 1068 (Pa.Super. 2010)). As our scope of review over an evidentiary question is plenary, we may review the ruling within the context of the entire record. *Id.*

Relevant evidence is admissible unless "otherwise provided by law." *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008) (quoting Pa.R.E. 402). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action." Pa.R.E. 401. Further, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger

of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.'" ***Commonwealth v. Cunningham***, 805 A.2d 566, 572 (Pa.Super. 2002) (quoting Pa.R.E. 801(c)). Hearsay is inadmissible "except as provided by [the Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

One exception to the hearsay rule is an opposing party's statement: "**(25) An Opposing Party's Statement.** The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity...." Pa.R.E. 803(25) (A).

> Party admissions are not subject to hearsay exclusion because[ ] it is fair in an adversary system that a party's prior statements be used against him if they are inconsistent with his position at trial. In addition, a party can hardly complain of his inability to cross-examine himself. A party can put himself on the stand and explain or contradict his former statements. Thus, in criminal cases, [the Supreme Court of Pennsylvania] has consistently held that a defendant's out-of-court statements are party admissions and are exceptions to the hearsay rule.

***Commonwealth v. Edwards***, 903 A.2d 1139, 1157-58 (Pa. 2006) (citations omitted).

In the instant case, the trial court aptly concluded that Nurse Mann's testimony regarding McLaurin's admission that he was not a user of street

drugs was in fact hearsay under Pa.R.E. 801(c) because it was an out-of-court statement offered for the truth of the matter asserted. However, the court properly found Nurse Mann's testimony regarding McLaurin's statements was admissible, pursuant to Pa.R.E. 803(25)(A), as a statement of a party opponent. **See Edwards**, 903 A.2d at 1157-58.

Further, the court properly considered the probative value of McLaurin's statement that he was not a street drug user, in light of McLaurin's contention at trial that the contraband found in his car was for his personal use, rather than for distribution. **See** Pa.R.E. 401. All of this was relevant to whether McLaurin possessed the intent to deliver. McLaurin's claim that the evidence was unfairly prejudicial because it only served to prove that he intended to deliver the drugs is therefore utterly meritless. Any issue with the two-month lapse between the night in question and his statement to Nurse Mann was a question of the weight of the testimony, not its admissibility. The trial court did not abuse its discretion by admitting Nurse Mann's testimony. **See Huggins**, 68 A.3d at 966; **Minich**, 4 A.3d at 1068.

Regarding the intake records, McLaurin fails to develop any argument specific to the admission of such evidence. He therefore waived this argument. **See Commonwealth v. Charleston**, 94 A.3d 1012, 1022-23 (Pa.Super. 2014) (finding waiver where appellant failed to develop argument). In any event, any error in the admission of the records was harmless. Harmless error exists where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005). "[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless." *Id.* In this case, the intake forms presented information cumulative of Nurse Mann's properly admitted testimony.[4] Thus, McLaurin's second issue is also devoid of merit.

Accordingly, because we conclude that the trial court did not error by denying McLaurin's motion to suppress evidence or by the admission of evidence regarding his prior statement denying street drug use, we affirm McLaurin's judgment of sentence.

Judgment of sentence affirmed.

---

[4] We note that the instant trial court precluded the admission of the same written intake records in McLaurin's prior trial for similar charges. There, the court found that the records constituted hearsay, for which no exception to the hearsay rule applied, and were more prejudicial then probative. This Court affirmed. *Commonwealth v. McLaurin*, 195 A.3d 968 (Pa.Super. August 3, 2018) (unpublished memorandum). The instant case is distinguishable because, most critically, Nurse Mann testified here regarding McLaurin's statements, thus rendering any error in admitting the documents harmless. No such testimony was presented in McLaurin's previous case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/05/2020